UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRESTORM LABS, INC.,<br><br>                                    Plaintiff,<br><br>v.<br><br>RAPIDFLIGHT HOLDINGS LLC,<br><br>                                    Defendant. | Case No.: 24-CV-2387 JLS (JLB)<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF AND DEFENDANT'S RESPECTIVE MOTIONS TO SEAL;**<br><br>**(2) GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE; AND**<br><br>**(3) DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT;**<br><br>(ECF Nos. 9, 12, 15) |

Presently before the Court is Defendant RapidFlight Holdings LLC's ("Defendant" or "RapidFlight") Motion to Dismiss Plaintiff's First Amended Complaint ("Mot.," ECF No. 9), along with its Memorandum of Points and Authorities ("Mem.," ECF No. 9-1). Also before the Court is Plaintiff Firestorm Labs, Inc.'s ("Plaintiff" or "Firestorm") Motion

to file a redacted version of its Opposition to RapidFlight's Motion to Dismiss, and to file the supporting Exhibit A under seal in its entirety ("Firestorm Sealing Mot.," ECF No. 12). Firestorm also lodged its proposed documents to be filed under seal, *see* ECF No. 13, and filed an Opposition to RapidFlight's Motion to Dismiss ("Opp'n," ECF No. 14). RapidFlight did not oppose Firestorm's Motion to Seal, and instead filed its own Motion to Seal, seeking to redact portions of its Reply which recite from the Exhibit A document Firestorm moved to seal ("RapidFlight Sealing Mot.," ECF No. 15). Thereafter, RapidFlight lodged the proposed documents to be filed under seal, *see* ECF No. 16, and filed a Reply in Support of its Motion to Dismiss ("Reply," ECF No. 17).

The Court then took the Motions under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 18. Having carefully reviewed the Motions, the briefing, Plaintiff's First Amended Complaint ("FAC," ECF No. 5), the Parties' arguments, and the law, the Court **GRANTS** the Parties' respective Motions to Seal and **DENIES** Defendant's Motion to Dismiss.

## BACKGROUND

Plaintiff Firestorm filed its initial Complaint in this Court on December 18, 2024. *See* ECF No. 1. Firestorm subsequently filed its First Amended Complaint on December 19, 2024. *See* FAC. The FAC alleges the following.

Firestorm, a San Diego company, develops modular, 3D printed unmanned ariel systems ("UASs"). FAC ¶ 1. Defendant RapidFlight is Plaintiff's competitor and also sells 3D printed UASs. *Id.* ¶¶ 4–5.

RapidFlight holds patents covering various aspects of its technology, including U.S. Patent Nos. 11,597,490 ("the '490 Patent") and 11,840,323 ("the '323 Patent") (collectively, "Patents-in-Suit"). On June 28, 2023, RapidFlight's attorney sent Firestorm a letter accusing Firestorm of infringing the '490 Patent, and demanding Firestorm:

> (i) Immediately stop marketing, manufacturing, selling, offering for sale or importing products that infringe RapidFlight's patent rights;
> (ii) disclose all information about its purchases and sales

of the infringing products, including its source for (and other sellers of) these products;

(iii) destroy any inventory of the infringing products (and provide documentation of such destruction by an independent and reliable entity); and

(iv) pay RapidFlight a reasonable royalty rate for sales of infringing products and reimbursement of RapidFlight's legal fees in connection with this matter.

*Id.* ¶¶ 12–15. RapidFlight's letter imposed a two-week deadline to respond. *Id.* ¶ 16.

On July 12, 2023, Firestorm's counsel responded to RapidFlight's letter, indicating that it would take time to investigate and analyze, and explained its hope that "Firestorm and RapidFlight can find an amicable resolution." *Id.* ¶¶ 17–18.

On August 11, 2023, Firestorm's counsel sent RapidFlight's counsel another letter, explaining that RapidFlight's allegations were not correct, specifically, because RapidFlight's infringement allegations misidentify a simple connector component on a Firestorm product as a "reinforcement element." *Id.* ¶¶ 19–21. Firestorm's counsel included three-dimensional models of the relevant portions of Firestorm's products. *Id.* ¶ 23.

On August 31, 2023, RapidFlight's counsel responded by letter, telling Firestorm that it "appreciate[d] the rendering of the Firestorm product," but claimed that there was "some ambiguity as to the nature of the coupling[.]" *Id.* ¶¶ 25–26. RapidFlight thus requested that Firestorm allow its attorneys to inspect Firestorm's "technical manuals or other product design documents." *Id.* ¶ 26. Firestorm's counsel responded on October 3, 2023, and explained that "Firestorm provided RapidFlight with sufficient information for RapidFlight to see for itself" that Firestorm's products do not infringe RapidFlight's patent. *Id.* ¶¶ 27–28. However, Firestorm also told RapidFlight it remained willing to negotiate a business resolution. *Id.* ¶ 30.

RapidFlight's counsel responded to Firestorm's letter on November 6, 2023, telling Firestorm that it had no present intention to file a lawsuit "based on an 'advertisement,'" but would continue to "investigate Firestorm's product line" and reserved the "right to

enforce any and all patent rights as further developments warrant." *Id.* ¶¶ 31–32.

RapidFlight never sent Firestorm another letter. *Id.* ¶ 33. However, Firestorm was subsequently led to believe that RapidFlight approached decisionmakers for government contracts being pursued by both Firestorm and RapidFlight to accuse Firestorm of infringement and claim that a lawsuit was imminent. *Id.* ¶ 35. Firestorm asserts that RapidFlight's allegations create a real and immediate controversy between the Parties regarding whether Firestorm's products infringe any claim(s) of the Patents-in-Suit, and that RapidFlight's statements and conduct "show it is likely that it will assert infringement of the Patents-in-Suit against Firestorm." *Id.* ¶ 40. Firestorm thus seeks a judicial declaration that it does not infringe the Patents-in-Suit. *Id.* ¶ 41.

On February 3, 2025, RapidFlight moved to dismiss Plaintiff's FAC. *See* Mot. In its Motion, RapidFlight also requests the Court take judicial notice of attached Exhibits 1–6. Mem. at 6. On February 27, 2025, Firestorm filed its Opposition and Motion to Seal. *See* Firestorm Sealing Mot.; *see also* Opp'n. RapidFlight did not oppose Firestorm's Motion to Seal, *see generally* Docket, and on March 6, 2025, RapidFlight filed its Reply and a Motion to Seal the portions of its Reply that referenced a document Firestorm moved to seal. *See* RapidFlight Sealing Mot.; *see also* Reply.

## MOTIONS TO SEAL

The Court finds it appropriate to first address the Parties' respective Motions to Seal portions of their briefing. As noted above, Firestorm has filed a Motion to File Under Seal Firestorm Labs, Inc.'s Opposition to Defendant's Motion to Dismiss, seeking leave to file a redacted version of its Opposition, and to file Exhibit A under seal in its entirety. *See generally* Firestorm Sealing Mot. In turn, RapidFlight requests permission to file a redacted copy of its Reply as such filing recites portions of Firestorm's Exhibit A. *See generally* RapidFlight Sealing Mot.

## I.    Legal Standard

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner*

*Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'"  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

A party seeking to seal a judicial record bears the burden of overcoming this strong presumption of access. *Kamakana*, 447 F.3d at 1178 (citing *Foltz*, 331 F.3d at 1135).  The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1102.  When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id.* at 1096–98.  When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. *Id.*  Briefing on a motion to dismiss is more than tangentially related to the merits of the case and is thus subject to the "compelling reasons" standard. *Pinnacle Ventures LLC v. Bertelsmann Educ. Servs.*, No. 18-cv-03412-BLF, 2019 WL 13126128, at *1 (N.D. Cal. Dec. 10, 2019).

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598).  For instance, "the common-law right of inspection has bowed before the power of a court to [e]nsure that its records are not used . . . as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598; *Ctr. for Auto Safety*, 809 F.3d at 1097.  However, "[t]he

mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana,* 447 F.3d at 1179 (citing *Foltz,* 331 F.3d at 1136).

Under the "compelling reasons" standard, the party seeking protection must "present 'articulable facts' identifying the interests favoring continued secrecy *and* . . . show that these specific interests overc[o]me the presumption of access by outweighing the 'public interest in understanding the judicial process.'" *Id.* at 1181 (citation omitted) (first quoting *Foltz,* 331 F.3d at 1136; and then quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). "The movant must make this required particularized showing for each document it seeks to seal." *Avnet, Inc. v. Avana Techs. Inc.*, No. 2:13-CV-00929-GMN, 2014 WL 4181831, at *1 (D. Nev. Aug. 20, 2014) (citing *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999)). And if the movant wishes to seal an entire document, they must show that their compelling interest cannot be protected by redacting only the sensitive portions of said document. *See In re Roman Cath. Archbishop*, 661 F.3d 417, 425 (9th Cir. 2011); *Foltz*, 331 F.3d at 1136–37. If, by contrast, compelling reasons do not support sealing an entire document, the movant must offer compelling reasons to seal each portion of the documents they believe should be sealed. *See Apex.AI, Inc. v. Langmead*, No. 5:23-CV-02230-BLF, 2023 WL 4157629, at *1 (N.D. Cal. June 23, 2023); *see also In re Roman Cath. Archbishop*, 661 F.3d at 425.

The decision to seal documents is "one best left to the sound discretion of the trial court" upon consideration of "the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599. "[T]he court must 'conscientiously balance[] the competing interests' of the public and the party who seeks to keep certain judicial records secret." *Kamakana*, 447 F.3d at 1179 (quoting *Foltz*, 331 F.3d at 1135).

## II. Analysis

Here, Firestorm indicates the redacted portions of its Opposition, and the entirety of Exhibit A incorporate its "highly confidential business information." Firestorm Sealing Mot. at 1. Per Firestorm, Exhibit A is a confidential business record as it is communication

6

to Firestorm from one of Firestorm's key government contacts.  *Id.*  Firestorm considers the communication, its contents, and its working relationship with the individual to be highly confidential.  *Id.*  Such information, according to Firestorm, would cause it harm if disclosed to third parties, including by giving customers and competitors unfair insights into Firestorm's business strategies and operational processes.  *Id.*

Upon review of Firestorm's Motion to Seal, lodged filings, and proposed redactions, the Court agrees with Firestorm that public disclosure could cause Firestorm competitive harm and give its competitors an unfair advantage.  The Court also finds Firestorm's redactions in its Opposition are sufficiently tailored to the sensitive portions of the document.  Thus, the Court finds compelling reasons support Firestorm's redactions in its Opposition and sealing of Exhibit A in its entirety.  Accordingly, the Court **GRANTS** Firestorm's Motion to Seal (ECF No. 12).

Where a Court has previously sealed a particular document in the course of litigation and sees no reason to depart from that conclusion, it may again grant a request to seal material extracted from that document.  *See HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, No. 22-CV-04109-TSH, 2023 WL 1768120, at *3 (N.D. Cal. Feb. 3, 2023); *see also Synchronos Techs., Inc. v. Dropbox Inc.*, No. 16-cv-0119-HSG, 2020 WL 759528, at *5 (N.D. Cal. Feb. 14, 2020).  As RapidFlight's Motion seeks to redact portions of its Reply containing recitations of Firestorm's Exhibit A, which the Court finds compelling reasons to seal, the Court likewise **GRANTS** RapidFlight's Motion to Seal (ECF No. 15).

## REQUEST FOR JUDICIAL NOTICE

Next, before ruling on RapidFlight's Motion to Dismiss, the Court must clarify which documents it may consider.  The Court thus turns to RapidFlight's Request for Judicial Notice ("RJN") of Exhibits 1–6 of its Motion to Dismiss (ECF No. 9-2).  *See* Mem. at 6.

/ / /

/ / /

## I.    Legal Standard

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).    However, a document "not attached to a complaint . . . may be incorporated by reference into a complaint if the plaintiff refers extensively to the document." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).    "'[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document' under *Ritchie*." *Khoja*, 899 F.3d at 1002 (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

A document may also be incorporated by reference into a complaint if it "forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.    A document forms the basis of a claim where "the claim necessarily depend[s] on the [document]." *Khoja*, 899 F.3d at 1002 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).    And a complaint "necessarily relies" on a document "if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted).    "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002.

When a document is incorporated by reference, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss[.]" *Ritchie*, 342 F.3d at 908.    Moreover, while the Court treats all plaintiff's factual allegations as true for the purposes of a motion to dismiss pursuant to 12(b)(6), the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

/ / /

## II.    Analysis

Here, RapidFlight represents that Exhibits 1–6 are "true and correct copies of the letters exchanged between counsel for RapidFlight and Firestorm that are referenced and relied upon by Firestorm in its FAC."  Mem. at 6 (first citing FAC at ¶¶ 12–32, 38–39; and then citing Declaration of its counsel, Melenie Van ("Van Decl."), ECF No. 9-2 ¶¶ 2–7).  And RapidFlight argues these letters serve as the basis for Firestorm's allegations and First and Second Claims for Relief.  *Id.*  Firestorm, for its part, does not oppose the RJN, nor question the authenticity of the letters.  *See generally* Opp'n.  The Court finds judicial notice of Exhibits 1–6 to be appropriate, as the FAC refers to these documents, the documents are central to Firestorm's allegations against RapidFlight, and no party questions the authenticity of the copies attached to RapidFlight's Motion to Dismiss.  Accordingly, RapidFlight's Request for Judicial Notice of Exhibits 1–6 of its Motion to Dismiss (ECF No. 9-2) is **GRANTED**.

## MOTION TO DISMISS

The Court now turns to RapidFlight's Motion to Dismiss Firestorm's FAC.  RapidFlight argues that (1) Firestorm's allegations are insufficient to establish a prima facie case or controversy necessary for declaratory judgment actions pursuant to Rules 12(b)(1) and 12(h)(3); (2) RapidFlight's evidence conclusively establishes there is no prima facie case or controversy under Rules 12(b)(1) and 12(h)(3); and (3) Firestorm's allegations are insufficient pursuant to Federal Rule of Procedure 12(b)(6).  *See generally* Mot.

## I.    Legal Standards

### A.    *Subject-Matter Jurisdiction – Rule 12(b)(1)*

Federal courts are courts of limited jurisdiction and thus have an obligation to dismiss claims for which they lack subject matter jurisdiction.  *Demarest v. United States*, 718 F.2d 964, 965–66 (9th Cir. 1983).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  When a party files a 12(b)(1) motion, "there is a

presumption of a lack of jurisdiction until the plaintiff affirmatively proves otherwise." *Orient v. Linus Pauling Inst. of Sci. & Med.*, 936 F. Supp. 704, 706 (D. Ariz. 1996). Under Federal Rule of Civil Procedure 12(b)(1), a party may raise by motion the defense that the complaint lacks subject matter jurisdiction via a facial or factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Typically, a court resolves a facial attack as it would a Rule 12(b)(6) motion: "Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient . . . to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

By contrast, a factual attack, "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003)). "If the 'existence of jurisdiction turn[s] on disputed factual issues,' and those 'jurisdictional disputes [are] not intertwined with the merits of the claim,' then 'it [falls] to the district court to resolve those factual disputes itself.'" *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143 (9th Cir. 2024) (quoting *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021)). However, "when jurisdictional issues are 'intertwined with an element of the merits of the plaintiff's claim,' the court must treat the motion like a motion for summary judgment and 'leave the resolution of material factual disputes to the trier of fact.'" *Id.* (quoting *Leite*, 749 F.3d at 1122).

**B.    Declaratory Judgment Act**

The Declaratory Judgment Act ("DJA") provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The DJA's standing requirement refers to Article III's case and controversy for justiciable claims.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).  To satisfy Article III's standing requirements, a plaintiff must demonstrate that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 127.

The DJA allows potential infringers to bring claims against patent holders if there is an actual case or controversy between the parties.  *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1327–28 (Fed. Cir. 2012).  In patent cases, the Federal Circuit has held that for a plaintiff to establish it has Article III standing in a declaratory judgment action, a plaintiff must allege "(1) an affirmative act by the patentee related to the enforcement of his patent rights, and (2) meaningful preparation to conduct potentially infringing activity."[1]  *Ass'n for Molecular Pathology v. U.S. Patent and Trademark Off.*, 689 F.3d 1303, 1318 (Fed. Cir. 2012), *aff'd in part and rev'd in part on other grounds*, 569 U.S. 576 (2013) (internal citations omitted).  This alleged conduct must "be reasonably inferred as demonstrating intent to enforce a patent."  *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009).  The plaintiff seeking declaratory judgment bears the burden of showing the existence of an "actual controversy" sufficient to confer Article III jurisdiction.  *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d

---

[1] Federal Circuit law governs case or controversy issues involving declaratory judgment determinations about patent infringement or validity.  *See Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1368 (Fed. Cir. 2007).

1350, 1354–55 (Fed. Cir. 2013).  A patent infringement matter must be dismissed if Article III standing is not proper at the time of the filing of the suit.  S*chreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005).

### C.    Failure to State a Claim – Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.*  This review requires context-specific analysis involving

the Court's "judicial experience and common sense." *Id.* at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

"In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019) (citing *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## II.    Analysis

### A.    FAC's Sufficiency Under Rule 12(b)(1)

The Court first addresses RapidFlight's Rule 12(b)(1) facial and factual challenges to this Court's subject matter jurisdiction.

#### 1.    Facial Challenge

RapidFlight argues that Firestorm has failed to allege facts sufficient to establish a prima facie case or controversy necessary to support declaratory jurisdiction for its non-infringement claims. Mem. at 8. The thrust of this argument appears to go towards whether Firestorm has established a current pending case or controversy with respect to its claim of non-infringement of RapidFlight's '490 Patent. However, RapidFlight also suggests there is no case or controversy with respect to Firestorm's claim of non-infringement of the '323 Patent. The Court will address each argument in turn.

##### a.    '490 Patent

RapidFlight first contends that Firestorm fails to allege facts sufficient to establish an affirmative act by RapidFlight to threaten enforcement of its patent rights. Specifically,

RapidFlight argues the exchange of letters discussed in the FAC "tends to show the *absence* of a current case or controversy." Mem. at 8 (emphasis in original).

The Court disagrees. The Federal Circuit has indicated that, for an affirmative act, "more is required than 'a communication from a patent owner to another party, merely identifying its patent and the other's product line.' [But] [h]ow much more is required is determined on a case-by-case analysis." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378–79 (Fed. Cir. 2012) (citation omitted). When "a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support [Article III standing.]" *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) (emphasis in original). However, an "explicit threat is not necessary. Indeed, there need not be any kind of threat. So long as there is an actual charge of infringement, or even an effective charge of infringement, that is enough to give rise to a case or controversy, particularly where a specific infringing product is identified by the patentee." *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.,* 975 F. Supp. 2d 1083, 1091 (N.D. Cal. 2013) (internal citations omitted).

Further, "[w]hen the conduct of the patentee can be 'reasonably inferred as demonstrating intent to enforce a patent' against the declaratory judgment plaintiff, subject matter jurisdiction will arise, even when that intent is demonstrated implicitly." *Amazon.com, Inc. v. Straight Path IP Grp. Inc.*, No. 5:14–cv–04561–EJD, 2015 WL 3486494, at * 3 (N.D. Cal. May 28, 2015) (quoting *Hewlett–Packard Co.*, 587 F.3d at 1363–64).

As an initial matter, the first letter, on June 28, 2023, demonstrates an "affirmative act by the patentee relating to the enforcement of [its] patent rights." *3M Co.*, 673 F.3d at 1377. The letter was sent by RapidFlight directly to Firestorm, explicitly accusing Firestorm's unmanned aerial vehicle ("UAV")[2] of infringing Claim 12 of its '490 Patent.

---

[2] The Court notes UAVs are described by RapidFlight as a "category of UASs," *see* Mem. at 1, and the Parties appear to use the terms interchangeably to describe Firestorm's product both in their briefing on

Ex. 1 ("June 28 Letter") at 1–2, ECF No. 9-2.  In this letter to Firestorm, RapidFlight stated that "Firestorm Labs, Inc. . . . is making, using, selling, offering for sale, and/or importing a UAV that infringes RapidFlight's patent rights."  June 28 Letter at 1.  This language mirrors the language of 35 U.S.C. § 271, the patent infringement statute.  RapidFlight then mapped the specific claim elements of Claim 12 of the '490 Patent onto an image of the Firestorm Tempest UAS and demanded that Firestorm stop selling its product, destroy its inventory, and pay damages and attorneys' fees.  *Id.* at 3–4.  RapidFlight also imposed a two-week deadline to respond or RapidFlight "would proceed in other ways to enforce [its] valuable intellectual property rights[.]"  *Id.* at 4.

Such conduct alone is sufficient to demonstrate a case or controversy adequate to support declaratory judgment jurisdiction.  *Hewlett-Packard Co.*, 587 F.3d at 1362 (If "a party has actually been charged with infringement of the patent, there is, *necessarily,* a case or controversy adequate to support [declaratory judgment] jurisdiction." (citing *Cardinal Chem. Co.*, 508 U.S. at 96)).

Moreover, Firestorm took an adverse position in response, creating a "definite and concrete" dispute between itself and RapidFlight.  *See id.* at 1364.  After first stating it would investigate the claim and respond, *see* Ex. 2, ECF No. 9-2, in a following letter on August 11, 2023, Firestorm flatly rejected RapidFlight's accusations of infringement as "incorrect and unfounded," and challenged the '490 Patent's validity, Ex. 3 ("August 11 Letter") at 1, 4, ECF No. 9-2.  Specifically, Firestorm argued its UAV "lacks several features required by the claimed '*additive manufactured airframe structure*,' recited in Claim 12 of the '490 Patent."  *Id*. at 1 (emphasis in original).  In doing so, Firestorm provided a three-dimensional model of its fuselage structures to demonstrate non-infringement.  *Id.* at 3.  Additionally, Firestorm indicated that, in looking into the validity of the '490 Patent, it "found multiple prior art references that would invalidate all of the

---

this Motion to Dismiss, and their 2023 correspondence.  Accordingly, for the purposes of this Order, the Court likewise treats these terms as interchangeable.

claims in the '490 patent if it were presented to the U.S. Patent and Trademark Office (USPTO) through Inter Partes Review (IPR) or Ex Parte Reexamination (EPR)." *Id.* at 4. These facts demonstrate "declaratory judgment jurisdiction arising from a 'definite and concrete' dispute between [plaintiff] and [patentee], parties having adverse legal interests." *Hewlett-Packard Co.*, 587 F.3d at 1364 (finding declaratory judgment jurisdiction where patentee "took the affirmative step of twice contacting [plaintiff] directly, making an implied assertion of its rights under the [patent in suit] against [plaintiff's] products, and [plaintiff] disagreed").

RapidFlight, in its Motion to Dismiss, does not forcefully resist that its June 28 cease-and-desist letter demonstrates an affirmative step to enforce its rights, and created a case and controversy. Rather, it asserts that "any case or controversy created between the Parties was defused after the final letter in November 2023." Mem. at 9. But a review of the letters and the case law does not support this conclusion.

In concluding its August 11 Letter, Firestorm stated it had "no intention of pursuing an IPR or EPR if there is no contention of infringement by Firestorm in view of the showing above of Firestorm's 3D-printed UAV." August 11 Letter at 4. Firestorm emphasized it would "greatly appreciate your reply acknowledging that, in view of the above, Firestorm does not infringe Claim 12 of the '490 patent." *Id.*

But RapidFlight did not provide such assurances. Instead, in its letter dated August 31, 2023, RapidFlight noted its appreciation of the rendering of the Firestorm product included in the August 11 Letter, but went on to state such rendering did not match the illustrations released publicly. Ex. 4 ("August 31 Letter") at 1, ECF No. 9-2. Accordingly, RapidFlight indicated that there "appears to be some ambiguity as to the nature of the coupling" of Firestorm's connector to the fuselage structure and requested that Firestorm allow RapidFlight's attorneys to inspect Firestorm's "technical manuals or other product design documents." *Id.* at 2.

In Firestorm's response letter on October 3, 2023, Firestorm declined RapidFlight's request for further information, stating that "Firestorm provided RapidFlight with

sufficient information for RapidFlight to see for itself" that Firestorm's products do not infringe RapidFlight's patent.  Ex. 5 ("October 3 Letter") at 1, ECF No. 9-2.  Firestorm also stated RapidFlight had no basis to support its accusations of infringement, as, in its view, "the entirety of RapidFlight's accusation was based on an advertisement and advertisements cannot infringe."  October 3 Letter at 1 n.1.  And Firestorm noted its disappointment that RapidFlight's letter did not "expressly acknowledge" that Firestorm's UAV does not infringe Claim 12 of the '490 Patent, nor "address the issue of invalidity" that Firestorm had raised in its prior letter. *Id.* at 1.  But Firestorm indicated that in lieu of pursuing invalidity proceedings, it was "open to discussing a standstill agreement between the companies." *Id.* at 2.

In its final letter, on November 6, 2023, RapidFlight again did not provide any assurance that Firestorm's UAV does not infringe Claim 12 of the '490 Patent.  But RapidFlight did state it "has no intention to file a lawsuit based on an 'advertisement.'" Ex. 6 ("November 6, 2023 Letter") at 1, ECF No. 9-2.  In RapidFlight's view, this shows that the Parties "were in agreement that the design accused by RapidFlight was not incorporated into an actual Firestorm product, and, thus, was not the subject of infringement." Mem. at 9.  But Firestorm responds that in the remainder of the November 6 Letter, RapidFlight states it has "not been provided with a basis for discussing a standstill agreement at this time," and will "continue to investigate Firestorm's *product line*, and . . . reserves the right to enforce any and all patent rights as further developments warrant[,]" which explicitly invokes the specter of future patent litigation showing an ongoing case and controversy.  Opp'n at 16 (citing November 6 Letter at 1) (emphasis in Opposition).

The Court finds that, based on all the circumstances, RapidFlight's conduct can be "reasonably inferred as demonstrating intent to enforce a patent," which is sufficient for declaratory judgment jurisdiction. *Hewlett-Packard Co*, 587 F.3d at 1363.  RapidFlight's assertion that it does not intend to sue based on an "advertisement" means little when it has directly accused Firestorm of infringement and demanded monetary damages, indicated

17

Firestorm's response that it does not infringe only created "ambiguity," and followed up its assertion that it would not sue based on an "advertisement" with a promise to continue to investigate Firestorm's product line. Such conduct lends itself to a reasonable inference that RapidFlight is dissatisfied with Firestorm's responses and remains intent on enforcing its patent.

While RapidFlight argues it only made a "standard reservation of rights" in its last letter and did not have sufficient information about Firestorm's product to engage in a discussion of a standstill agreement, *see* Reply at 5, "it is irrelevant whether [the patentee] had conducted an adequate investigation or whether it subjectively believed [the declaratory judgment plaintiff] was infringing." *Hewlett-Packard Co.*, 587 F.3d at 1363. Rather, the "test [for declaratory judgment jurisdiction in patent cases], however stated, is *objective . . . ." Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed. Cir. 1988) (emphasis added). "Indeed, it is the objective words and actions of the patentee that are controlling." *BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 979 (Fed. Cir. 1993). Here, RapidFlight's conduct, viewed objectively, is sufficient to support a reasonable inference that RapidFlight is intending to enforce its patent.

In any event, the Federal Circuit has held that even a "direct and unequivocal" statement by a patentee that it "has absolutely no plan whatsoever to sue" the declaratory judgment plaintiff does not eliminate the justiciable controversy created by a patentee's actions, where the patentee "has engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights," despite such statement. *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382–83 (Fed. Cir. 2007). RapidFlight's statement that it does not intend to sue based on an "advertisement" but will continue to investigate Firestorm's product line is certainly less than a "direct and unequivocal" statement that it will not sue Firestorm. And RapidFlight's conduct demonstrates a preparedness and willingness to enforce its patent rights.

First, RapidFlight directly accused a specific Firestorm activity of infringing a claim of its patent, and demanded Firestorm cease operations, destroy inventory, and pay

damages and attorneys' fees.  *See* June 28 Letter.  Then, upon Firestorm taking the adverse position that it did not infringe, and requesting RapidFlight's confirmation of the same, RapidFlight gave none, and instead asserted there was "ambiguity" in the styling of Firestorm's product, and requested further information to "complete its review." August 31 Letter at 2.  In taking these steps, RapidFlight "t[ook] a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk*, 480 F.3d at 1381 (emphasis added).  Considering the controversy created by such communication, a statement that RapidFlight does not intend to sue engages "in the kinds of 'extra-judicial patent enforcement with scare-the-customer-and-run tactics' that the Declaratory Judgment Act was intended to obviate." *SanDisk Corp.*, 480 F.3d at 1383 (quoting *Arrowhead,* 846 F.2d at 735).

RapidFlight, in its Reply, argues "*SanDisk* has no relevance to this case" because there, the products that were the subject of detailed accusations of infringement "were *actual SanDisk products*, not mere graphics in an advertisement." Reply at 4–5 (emphasis in original).  Per RapidFlight, this is relevant because in *SanDisk*, the detailed accusations "provided the elements of a legitimate claim for patent infringement against an actual product," whereas here, RapidFlight's accusations in the June 28 Letter "could not provide the elements of a claim for patent infringement due to the lack of an actual product." Reply at 5.

The Court is not persuaded.  First, the Court notes RapidFlight's June 28 Letter directly accused Firestorm's *products* of infringing and annotated an image of a specific Firestorm product.  And RapidFlight provides no authority to support its position that it is legally significant—for the purposes of establishing a case or controversy—that RapidFlight made its accusations and demands based on promotional materials depicting products as opposed to the products themselves.  As already explained, whether or not RapidFlight "had conducted an adequate investigation or whether it subjectively believed [Firestorm] was infringing" is simply not relevant to the present inquiry. *Hewlett-Packard*

*Co.*, 587 F.3d at 1363; *see also Caterpillar Inc. v. ESCO Corp.*, No. 12-CV-1017, 2012 WL 12951188, at *5 (C.D. Ill. July 24, 2012) ("What the patentee has or has not determined behind closed doors is therefore irrelevant: 'it is the objective words and actions of the patentee that are controlling.'" (quotation omitted)). What matters is whether RapidFlight engaged in conduct that can be reasonably inferred as demonstrating intent to enforce a patent. Here, it has clearly done so.

To the extent RapidFlight is seeking the Court evaluate the merits of a potential infringement claim by it against Firestorm, the Court finds it premature to do so. However, at minimum, RapidFlight has made assertions, reflected in the FAC and incorporated letters, "that establish at least a reasonable potential that such a claim could be brought." *Microsoft Corp. v. DataTern, Inc*., 755 F.3d 899 (Fed. Cir. 2014). And in any event, the Court notes *SanDisk* expressly observed that the Supreme Court has exercised declaratory jurisdiction even where "the defendant could not have sued the declaratory judgment plaintiff[.]" *SanDisk Corp.*, 480 F.3d at 1383 (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

Next, RapidFlight suggests the Court analogize this case to one previously decided by this Court: *IDsmart, LLC v. IVI Smart Techs., Inc.*, No. 07CV1947 JLS (AJB), 2008 WL 11337436 (S.D. Cal. Sept. 29, 2008). But such case is readily distinguishable. In *IDsmart*, this Court found one "stray, generic reference to a patent infringement suit," by a patentee was insufficient to support declaratory judgment jurisdiction because the patentee did not "provide any specifics about which . . . products would infringe the [patent] or which claims of the patent would be infringed." 2008 WL 11337436, at *6. But here, as explained above, RapidFlight made direct accusations that Firestorm was "making, using, selling, offering for sale, and/or importing," a specific product—Firestorm's UAV—and provided an annotated image of that product, highlighting where it believed certain claim elements of RapidFlight's '490 Patent were met. *See* June 28 Letter. Such accusations provided specifics about which product would infringe which claim of its patent. And Firestorm responded to RapidFlight by rejecting its accusations and detailing

how its UAV lacks features required by Claim 12 of the '490 Patent. *See* August 11 Letter. Accordingly, the Parties' dispute "is manifestly susceptible of judicial determination. It calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1286 (Fed. Cir. 2007).

And the Court finds, though not explicitly challenged by RapidFlight, the delay between the Parties' 2023 letters and Firestorm's 2024 Complaint has not eliminated any case or controversy. *See 3M Co.*, 673 F.3d at 1381–82 (explaining that "the passage of time does not counsel against finding declaratory judgment jurisdiction if 'the relevant circumstances' surrounding the patentee's assertion of patent rights 'have not changed despite the passage of time'").

Finally, the Court notes RapidFlight argues "the only allegation in the FAC that even purports to establish a currently pending case or controversy is that 'RapidFlight has approached decisionmakers for government contracts being pursued by both Firestorm and RapidFlight to accuse Firestorm of infringement and claim that a lawsuit is imminent.'" Mem. at 8 (quoting FAC ¶ 35). RapidFlight then goes on to argue this is "conclusory and devoid of any detail that would establish act by the patentee related to the enforcement of his patent rights." *Id.* at 9. However, the Court need not reach this argument, as it has already found Firestorm's FAC and incorporated letters sufficient to show a case or controversy, regardless of whether there was any communication by RapidFlight to others accusing Firestorm of infringement or indicating a lawsuit is imminent.

In light of the foregoing, RapidFlight's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED** as to the '490 Patent non-infringement claim on this ground.

### b.    '323 Patent

RapidFlight also suggests that there is no case or controversy with respect to the '323 Patent, as this patent "includes *no claims covering fuselage segments*," and was not based on an "actual assertion of a patent claim by RapidFlight." Mem. at 10 (emphasis in original). In response, Firestorm argues that the case or controversy that exists as to the

'490 Patent extends to the related '323 Patent. Opp'n at 18. Specifically, Firestorm argues a case or controversy exists as the '323 Patent "is a continuation of the '490 Patent, shares a specification with the '490 Patent, shares inventors, and shares subject overlapping claims and claimed features." *Id.* at 19. Moreover, Firestorm indicates its counsel identified the application for the '323 Patent—'992 Application—in its October 3 Letter, and proposed that the Parties discuss a standstill agreement, which would apply to the '323 Patent upon issuance. *Id.* at 19. But RapidFlight told Firestorm that there was no "basis for discussing a standstill agreement at this time." November 6 Letter. RapidFlight provides no response in its Reply to any of these assertions.

The Court finds, considering the relatedness of the '323 Patent, and the implication of '992 Application during the Parties correspondence, a case or controversy also exists for the '323 Patent. *See e.g. Twitter, Inc. v. VoIP-Pal.com, Inc.*, No. 21-CV-02769-LHK, 2021 WL 5085959, at *9 (N.D. Cal. Nov. 2, 2021) ("Despite the wide variety of factors that may be relevant, the Federal Circuit has held that, if the defendant previously has asserted patents against the plaintiff, the plaintiff typically may seek a declaration regarding related patents."); *see also Resmed Corp. v. Cleveland Med. Devices, Inc.*, No. 23-CV-500 TWR (JLB), 2023 WL 5418763, at *3 (S.D. Cal. Aug. 22, 2023) (finding that where a controversy existed as to a first patent, the relatedness of that patent to a second "continuation[] stemming from the same patent application, list the same named inventors, share similar figures and specifications, and contain similar claims . . . supports the existence of an actual controversy" as to the second patent).

Accordingly, RapidFlight's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED** as to the '323 Patent non-infringement claim on this ground.

### 2. Factual Challenge

RapidFlight next argues Declarations of Esina Alic ("Alic Decl.," ECF No. 9-3), Chief Executive Officer of RapidFlight, and Brandon Smith ("Smith Decl.," ECF No. 9-4), Director of Strategic Projects at RapidFlight, the primary communicators with government contracting officials on behalf of RapidFlight, "conclusively demonstrate that RapidFlight

did not make any accusation of infringement of a RapidFlight patent claim by a Firestorm product to the Decisionmakers, and did not make any threat of an imminent lawsuit against Firestorm." Opp'n at 10. Specifically, RapidFlight represents that "after the exchange of letters between the parties ended in 2023, neither Ms. Alic nor Mr. Smith have ever represented to any decisionmakers for government contracts (or anyone else) that a Firestorm product infringes a patent owned by RapidFlight." *Id.* at 11 (citing Alic Decl. ¶ 5; Smith Decl. ¶ 5). Further, RapidFlight indicates that "[a]lthough a small number of other RapidFlight personnel also have interfaced with decisionmakers for government contracts, Mr. Smith contacted those other RapidFlight personnel regarding the allegations in the FAC, and those personnel each responded that they also have never represented to any decisionmakers for government contracts (or anyone else) that (1) a Firestorm product infringes a patent owned by RapidFlight, or (2) RapidFlight was (or is) planning to file a lawsuit against Firestorm." *Id.* (citing Smith Decl. ¶ 6). Thus, RapidFlight contends that "as a factual matter, RapidFlight personnel never represented to the government Decisionmakers that RapidFlight accused a Firestorm product of infringing a RapidFlight patent or that RapidFlight was (or is) planning a lawsuit against Firestorm." *Id.*

In response, Firestorm contends that the 2023 letters are sufficient to show a case and controversy, independent of Firestorm's allegations that RapidFlight made statements to government decisionmakers, thus the challenge to these allegations cannot save its Motion to Dismiss under Rule 12(b)(1). Opp'n at 24. The Court agrees. Because the Court has found the FAC and the 2023 letters, incorporated therein, sufficiently demonstrate a case or controversy, independent of any allegations that RapidFlight made accusations of infringement to government decisionmakers, the Court has no occasion to reach RapidFlight's factual challenge as to these allegations for the purposes of its Rule 12(b)(1) challenge. This is because, even assuming RapidFlight's Declarations "conclusively established" that RapidFlight did not make accusations of infringement to government decisionmakers nor indicate any intention to sue Firestorm to such individuals, Firestorm has nevertheless alleged a case or controversy based on RapidFlight's conduct

towards Firestorm itself.  Thus, RapidFlight's Motion to Dismiss on this ground is **DENIED**.

### B.    *FAC's Sufficiency Under Rule 12(b)(6)*

RapidFlight also argues the FAC has failed to state a claim for relief under Rule 12(b)(6) because it "lacks factual content that would allow the Court to draw a reasonable inference that the RapidFlight made the alleged threat to sue[.]"  Mem. at 7.  Firestorm responds that it has stated a claim for declaratory judgment of non-infringement because it has put RapidFlight on notice of its claim for relief (i.e., non-infringement), and the ground upon which it stands.  Opp'n at 12.  The Court agrees with Firestorm.

Firestorm alleges RapidFlight has accused it of infringing the Patents-in-Suit, which relate to an "[a]dditive manufactured airframe structure having a plurality of additive manufactured airframe segments operable to be linked together in an assembled direction." FAC ¶¶ 50, 59.  And Firestorm represents its belief that "RapidFlight's infringement allegation relates to its Tempest UAS design."  *Id.* ¶¶ 51, 60.  Further, Firestorm indicates "its products have not and do not infringe any claim of the" '490 Patent or '323 Patent, "literally or under the doctrine of equivalents."  *Id.* at ¶¶ 54, 63.  Specifically, Firestorm alleges "RapidFlight's infringement allegations misidentify a simple connector component on a Firestorm product as a 'reinforcement element,'" and that "[w]ithout the 'reinforcement element in Claim 12, of the '490 Patent, a product cannot infringe that claim."  FAC ¶¶ 21–22.

From these allegations, the Court can draw a reasonable inference that Firestorm does not infringe the Patents-in-Suit.  *See Ironworks Pats. LLC v. Samsung Elecs. Co.*, No. 17-CV-01958-HSG, 2018 WL 1400440, at *2 (N.D. Cal. Mar. 20, 2018) ("Numerous California district courts have found general denials of infringement sufficient to sustain declaratory judgment claims for patent non-infringement at the pleading stage."); *see also MIS Scis. Corp. v. Rpost Commc'ns Ltd.*, No. 14-CV-00376-VC, 2016 WL 2931659, at *1 (N.D. Cal. May 19, 2016) (finding non-infringement claims sufficiently pleaded where the accusing party "described in general terms the accused products," and the accused party

broadly denied those allegations, because the accuser "should typically already be on notice of the patent infringement questions posed by the lawsuit"); *Am. Soc'y of Anesthesiologists v. BevMD, LLC,* No. 15-CV-600-BAS(JLB), 2016 WL 4257448, at *3–4 (S.D. Cal. Mar. 31, 2016) (finding adequate a "scantly" alleged claim that the accused product did "not infringe, has not infringed directly, indirectly, willfully, or otherwise" any claim of the asserted patent).

As Firestorm points out, RapidFlight's argument in support of its Rule 12(b)(6) Motion to Dismiss is solely directed towards whether Firestorm adequately pled that RapidFlight has accused it of infringement and threatened to sue. Opp'n at 13 (citing Mem. at 7). As discussed above, the Court finds that reviewing the allegations in the FAC, and documents incorporated therein, in the light most favorable to Firestorm, it has. However, the Court agrees with Firestorm that this fact is irrelevant to a Motion to Dismiss for *failure to state a claim* of non-infringement. Accordingly, the Court **DENIES** RapidFlight's Motion to Dismiss pursuant to Rule 12(b)(6).

**CONCLUSION**

In light of the foregoing, the Court **ORDERS** as follows:

1.     Plaintiff Firestorm's Motion to Seal (ECF No. 12) and Defendant RapidFlight's Motion to Seal (ECF No. 15) are **GRANTED**. The Clerk of Court **SHALL FILE** the lodged unredacted copies of Firestorm's Opposition (ECF No. 13) and Exhibit A (ECF No. 13-1), as well as the lodged unredacted copy of RapidFlight's Reply (ECF No. 16) under seal.

2.     Defendant RapidFlight's Motion to Dismiss (ECF No. 9) is **DENIED**.

**IT IS SO ORDERED**.

Dated:  July 28, 2025

Hon. Janis L. Sammartino
United States District Judge

25

24-CV-2387 JLS (JLB)